[No. 3975. Decided July 18, 1901.]

## J. A. STRAIN, *Appellant,* v. S. S. YOUNG *et. al., Respondents.*

ELECTIONS—INCREASE OF COUNTY INDEBTEDNESS BY VOTE—WHAT CONSTITUTES A THREE-FIFTHS VOTE—CONSTRUCTION OF CONSTITUTION.

Under art. 8, § 6 of the constitution, forbidding any county to become indebted in excess of one and one-half per centum of the taxable property in such county, "without the assent of three-fifths of the voters therein voting at an election to be held for that purpose," it is not necessary that a proposition for increasing the county's indebtedness submitted at a general election should obtain three-fifths of the highest vote cast at such general election, but no more is required than that such special proposition, in order to carry, receive three-fifths of the votes cast by the voters who specially vote thereon.

Appeal from Superior Court, Garfield County.—Hon. CHESTER F. MILLER, Judge. Affirmed.

*Frank Cardwell,* for appellant.

*Gose & Kuykendall,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—This action was brought by appellant against respondents, who constitute the board of commissioners of Garfield county. It is alleged in the complaint that on the 13th day of July, 1900, the court house and all county buildings of Garfield county were totally destroyed by fire, and that said county cannot secure buildings for county purposes except by building them. A resolution passed by the board of county commissioners of said county on the 9th day of August, 1900, is set out in the complaint, which resolution is to the effect that the question of contracting county indebtedness and issuing bonds of said county in the sum of $20,000 to secure money for the purpose of purchasing suitable grounds and erecting thereon and equipping public buildings for the use of said county be submitted to the voters of said county at the general election to be held on the 6th day of November, 1900. It also appears from the complaint that due notice of the submission of said question was given as required by law, and that at said election there were cast in said county four hundred and sixty-two votes, and no more, "for incurring county indebtedness and issuing bonds in the sum of $20,000 for court house and other county purposes," and two hundred and twenty-six votes, and no more, "against incurrring county indebtedness and issuing bonds in the sum of $20,000 for court house and other county purposes." It also appears that at said election there were cast in said county one thousand twenty-

three votes, and no more, for presidential electors. Said vote upon the question of incurring indebtedness was canvassed at the same time and place as the vote for presidential electors and state and county officers, and thereafter the board of county commissioners of said county declared that three-fifths of the voters of the county had voted in favor of incurring county indebtedness in the sum aforesaid. Afterwards the said board of commissioners caused notice to be given of a time and place when sealed bids would be received for the sale of bonds of said county in the sum of $20,000, to be issued for court house purposes. Bids were accordingly submitted and afterwards said board of commissioners entered into a contract with Roberts Bros. of Spokane, Washington, wherein and whereby it was agreed to sell to them $20,000 of the bonds of said county, in the denomination of $1,000 each, bearing four and one-half per cent. interest, at a par valuation, with $75 premium. It is alleged that said Roberts Bros. now decline to receive and pay for said bonds for the reason, as they claim, that, inasmuch as three-fifths of those who voted for presidential electors did not vote for said bonding proposition, the said proposition failed to carry. It is also alleged that said board of commissioners are claiming and asserting that said proposition was duly carried, and that the board are now negotiating with other persons for a sale of said bonds, and are threatening to sell, and will issue, sell, and deliver, them, unless restrained by an order of court; that said board have already entered into a contract for the construction of a court house at a cost of $18,000, and said court house is now under process of construction. The value of the taxable property of said county, as shown by the last assessment for state and county purposes, is alleged to be $1,777,460, and the existing indebtedness is $26,771.73. There are taxes due and de-

linquent to said county in the sum of $17,385. The county holds warrants against Asotin county aggregating $1,000, and there is cash on hand belonging to the county in the sum of $20,131. Appellant is shown to be a resident tax-payer of Garfield county, and by reason of the premises hereinbefore stated he prays that respondents, and each of them, be perpetually restrained and enjoined from issuing, selling, or delivering said bonds, or any of them. The respondents interposed a demurrer to the complaint, which was by the court sustained. To this ruling of the court the appellant duly excepted, and, having elected to stand upon his complaint, judgment was entered dismissing the cause. From said judgment the appellant has appealed to this court.

Three questions may be said to be presented by the complaint, viz.: (1) Has the issuance of bonds been legally authorized by a vote of the people? (2) Is the financial condition of the county such that the proposed indebtedness may be incurred without exceeding the limitation of one and one-half per cent. of the taxable value of the property in the county which may be done without a vote of the people? (3) Is such necessity shown to exist as brings this case within the rule of *Farquharson v. Yeargin,* recently decided by this court and reported in 24 Wash. 549 (64 Pac. 717)? We think it is unnecessary, for the determination of this case, to discuss more than the first question above stated, viz.: has the indebtedness been legally authorized by a vote of the people of Garfield county? Section 6, art. 8, of the constitution of Washington, provides as follows:

"No county . . . shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such county, . . . without the assent of three-fifths of the voters therein voting at an election to be held for that purpose."

By an act of the legislature, as found in § 1846, Bal. Code, counties are authorized to create indebtedness within the limitations prescribed by the above constitutional provision. The phraseology of the statute is somewhat different from that of the constitution; but, as the statute was enacted in pursuance of the constitution, it must be held to mean the same as the constitution. The question to be decided here is, does the above constitutional provision contemplate that three-fifths of all the voters voting at an election shall assent to the proposition to incur an indebtedness, or does the assent of three-fifths of those voting upon the proposition determine that it has been carried? In *Metcalfe v. Seattle*, 1 Wash. 297 (25 Pac. 1010), it was held by this court that the three-fifths majority required to carry an election in favor of increasing municipal indebtedness is three-fifths of those persons who actually vote at the election, and not three-fifths of all those who may have the right to vote thereat. The election in that case was a special one, and no other questions were submitted to the voters. In the case at bar the proposition was submitted at a general election, and counsel for appellant urges that this case should be distinguished from the former case, for the reason that at a special election the number of voters is determined by the whole number of votes cast for and against the only proposition submitted, while at a general election the number must be determined by the highest aggregate number of votes cast for candidates or propositions voted upon at such election. He therefore reasons that, since the result of this election shows that three-fifths of those who voted for presidential electors did not by their votes assent to the bonding proposition, it follows that the proposition failed to carry. As a direct response to counsel's argument, we quote from the opinion in *Metcalfe v. Seattle, supra,* pages 301, 302, as follows:

. "In every other instance, we believe, where the constitution prescribes the majority required to carry a particular proposition submitted to the electors, it is a majority of those who vote upon that proposition. See art. 8, § 3, authorizing the state to contract debts; art. 11, § 2, of the removal of county seats; art. 11, § 10, of the adoption of charters by cities; art. 14, §§ 1, 2, of the location of the seat of government; art. 23, § 1, of amendments to the constitution, and § 2, of the calling of constitutional conventions. Against this it may be said that, in each of the instances mentioned, the majority required is only a majority of those voting on the question submitted; but when we observe that in all these cases the questions are to be submitted at general elections, where the whole number of votes cast may far exceed those cast for and against the particular proposition, the general policy of the constitution becomes clear in no case to require an absolute majority of all those who vote at a general election to carry a special proposition, but only a majority of those who see fit to express themselves upon the proposition; and this policy being so, why, in this case of municipal indebtedness, should we, without any special or apparent reason, argue plain words out of their ordinary meaning, and conclude that a departure was intended from the otherwise steady policy of the constitution simply because precisely the same form of words is not used?"

An examination of each section of the constitution mentioned in the foregoing extract discloses, as is there stated, that in each instance, with possibly one exception, the majority required is specifically stated as a majority of those who vote upon a proposition. The exception may be said to be found in § 2, art. 23. The language of that section differs from that of the other sections, and is susceptible of another construction. But the language of the remaining sections named is so plain that it is not even open to any other construction. While it is true that the court in that case actually decided questions arising out of a special election only, yet the reasoning of the court as set

forth above is full and comprehensive in its analysis of the meaning of the constitution as applied to both special and general elections. The question decided related to a special election; but as an inducement to that decision the general policy of the constitution is discussed, and is declared to be the same in its application to both special and general elections. This interpretation of the constitution was announced early in the history of the state, and it is not improbable that municipalities in the state may have relied upon what was then said, and that obligations involving both them and individuals may have been created on the faith thereof. The possibility of such conditions existing would furnish a strong reason for following the reasoning of that case here, even though we might not now think it grounded upon soundest principles. We are satisfied, however, with the reasoning there used, and adopt it here, and make it decisive of the question now before us.

Since we entertain this view of the case it will serve no good purpose to extend this opinion by a discussion of the authorities cited by counsel upon either side. More than three-fifths of those who saw proper to exercise their right to vote upon the proposition assented to the incurring of the indebtedness. If other voters, who had the opportunity to exercise the power of the ballot, declined to do so, they cannot now complain upon any principle of right or justice. Voters should be sufficiently interested in the public welfare to go to the polls at the time of an election and vote upon the propositions submitted. If they fail to do so, then, under our interpretation of the constitution, those who actually do the voting upon propositions submitted must determine them.

The judgment is affirmed.

REAVIS, C. J., and FULLERTON, ANDERS, MOUNT and WHITE, JJ., concur.