[No. 6291.   Decided July 17, 1906.]

ROBERT B. FOX, *Appellant,* v. THE CITY OF SEATTLE,
                    *Respondent.*[1]

MUNICIPAL CORPORATIONS—BONDS—SUBMISSION TO VOTE—MAJORITY.
Const., art. 8, § 6, providing for the assent of three-fifths of the voters
therein, voting at a municipal election for the authorization of a
bond issue, and Seattle Charter, art. 20, § 4, providing for the assent
of three-fifths of the voters voting at such election, require only
a three-fifths majority of the voters actually voting on the proposi-
tion, although the vote may have been at a general election, and the
majority was less than three-fifths of the voters in the city, or less
than three-fifths of all the voters voting at the election.

Appeal from a judgment of the superior court for King
county, Honorable J. A. Stratton, judge *pro tempore,* en-
tered June 15, 1906, in favor of the defendant, upon sustain-
ing a demurrer to the complaint, in an action to enjoin the
issuance of municipal bonds.   Affirmed.

*John H. Powell,* for appellant, to the point that the char-
ter required the assent of three-fifths of all voting at the elec-
tion, cited:   *Law v. San Francisco,* 144 Cal. 384, 77 Pac.
1014; *People ex rel. Wells v. Berkeley* (Cal.), 36 Pac. 591,
23 L. R. A. 838; *Santa Rosa v. Bower,* 142 Cal. 299, 75
Pac. 829; *Stebbins v. Judge,* 108 Mich. 693, 66 N. W. 594;
*City of South Bend v. Lewis,* 138 Ind. 512, 37 N. E. 986;
*State ex rel. Omaha etc. R. Co. v. Bechel,* 22 Neb. 158, 34
N. W. 342; *State ex rel. Allen v. Mayor of St. Louis,* 73
Mo. 435; *In re Denny,* 156 Ind. 104, 59 N. E. 359, 51
L. R. A. 722; *State ex rel. Cope v. Foraker,* 46 Ohio St. 677,
23 N. E. 491, 6 L. R. A. 422; *State v. Babcock,* 17 Neb. 188,
22 N. W. 382; *Bayard v. Klinge,* 16 Minn. 249; *Dayton v.
St. Paul,* 22 Minn. 400; *State ex rel. Saunders v. Clark,*
59 Neb. 702, 82 N. W. 8; *State ex rel. Greene v. Hugo,* 84
Minn. 81, 86 N. W. 784; *In re Davis,* 62 Kan. 231, 61
Pac. 809; *Hogg v. Baker,* 17 Ky. Law. 577, 31 S. W. 726;

1Reported in 86 Pac. 379.

15 Cyc. 389, 390.   The constitution being a limitation, not a grant, the charter is unconstitutional as being in conflict with the constitution.   *Childs v. Anacortes,* 5 Wash. 452, 32 Pac. 217; *Yesler v. Seattle,* 1 Wash. 308, 25 Pac. 1014; *East St. Louis v. People ex rel. Gundlach,* 124 Ill. 655, 17 N. E. 447; *State ex rel. Packard v. Nelson,* 34 Neb. 162, 51 N. W. 648; *State ex rel. Saunders v. Clark, supra.*

*Scott Calhoun* and *F. R. Conway,* for respondent, cited: *City of South Bend v. Lewis,* 138 Ind. 512, 37 N. E. 986; *Dayton v. St. Paul,* 22 Minn. 400; *Metcalfe v. Seattle,* 1 Wash. 297, 29 Pac. 1010; *Strain v. Young,* 25 Wash. 578, 66 Pac. 64; *State ex rel. Wiesenthal v. Denny,* 4 Wash. 135, 29 Pac. 991, 16 L. R. A. 214; *Varney v. Justice,* 86 Ky. 596, 6 S. W. 457; *May v. Bermel,* 20 Appl. Div. 53, 46 N. Y. Supp. 622; *Smith v. Proctor,* 120 N. Y. 319, 29 N. E. 312, 14 L. R. A. 403.

DUNBAR, J.—This action was brought by the plaintiff to enjoin the defendant from issuing $1,100,000 of municipal bonds, $600,000 to provide funds for extensions to the municipal lighting plant of the city, and $500,000 to provide funds for the purchase of property for park purposes.   The defendant city claims to be authorized to issue said bonds by virtue of an authority conferred upon it by the electors of the city at the last general election, in the month of March last, at which election the proposition of the issuance of these bonds for the above purposes was submitted to a vote of the people.   It is conceded that the city has a right to issue the bonds in question, provided the proposition received the requisite vote at that election; so that the sufficiency of the vote cast in favor of the bonds is the only question for discussion here.   The lower court sustained a demurrer to both causes of action, and the plaintiff elected to stand upon his complaint.   The court thereupon rendered final judgment for the defendant.   From such judgment this appeal is taken.

It is alleged in the complaint, and is conceded, that each of the propositions submitted received the assent of three-fifths of the voters voting upon that proposition, and that neither of the propositions received the assent of three-fifths of all the voters voting at the general election. So that the question presented is, in order to legalize the issuance of the bonds, was it necessary that three-fifths of all the votes cast at said election should be cast in favor of said issuance, or was three-fifths of the votes of the voters voting upon the particular proposition submitted sufficient? This question depends upon certain provisions of the constitution and of the charter of the city of Seattle. Art. 8, § 6, of the state constitution provides, among other things, as follows:

"No county, city, town, school district, or other municipal corporation, shall for any purpose become indebted in any manner to an amount exceeding one and one-half percentum of the taxable property in such county, city, town, school district, or other municipal corporation, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose."

And § 30 of art. 4 of the charter of the city of Seattle provides as follows:

"When loans shall be created exceeding one and a half per centum of the taxable property in the city, and bonds therefor issued by the city under this charter, the city council in authorizing and providing for the same shall direct the times and manner of payment and rates of interest, but no such bonds shall be issued except as provided by law, nor unless the proposition for creating such indebtedness shall have been previously submitted to the electors of the city at a regular, general or special election, of which thirty days' notice shall have been published in the city official newspaper, and such proposition shall have then received the assent of three-fifths of the voters voting at such election."

It will thus be seen that the constitution provides for the assent of three-fifths of the voters therein voting at an election to be held for that purpose, and that the charter provides for the assent of three-fifths of the voters voting at such elec-

tion.  It is the earnest contention of the appellant that the only construction that can be given to such charter provision is that the proposition must receive three-fifths of all the votes cast at such election, whether cast upon the bond proposition, or for the election of mayor, or any other proposition which is submitted to the voters at such general election; and that, inasmuch as three-fifths of all the votes cast at the general election on all propositions were not cast in favor of the bond proposition, such proposition was lost; and many cases are cited in support of this contention.  It is conceded, however, that under the constitutional provision which prohibits the incurring of the indebtedness in question without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, the language of the constitution is satisfied if three-fifths of the voters voting at a special election assent to the issuance of the bonds, although a less number than three-fifths of the qualified electors of the city assent thereto.  So that we will not further notice this proposition, but will determine whether or not the charter provision which, if the appellant's contention is correct, places a still further limitation upon the right of the city than does the constitution, is satisfied by an affirmative vote of three-fifths of the voters voting upon such proposition at a general election.

Of course, if the vote were taken at a special election called only for the purpose of voting upon such bonds, this question could not arise, and a three-fifths vote would unquestionably be sufficient to warrant the issuance of the bonds. Courts are, and of right ought to be, reluctant to defeat the fair expression of the popular will manifested by the voters at an election the express and only object of which is to ascertain the popular will, and such expression will be upheld and made effective unless the law which defeats it is so plain and unequivocal that it is susceptible of but one construction, in which case the court is powerless to do otherwise than give legal effect to its provisions.  We do not think, however, that such a case is presented by the provisions of the city charter

above set forth, especially when construed with reference to the constitutional provisions relating to the same subject. And courts will, if possible, consistently with the proper canons of construction, construe the provisions of the charter to be in harmony with the constitution, rather than in opposition to or in any way limiting its provisions. It seems to us that there is no real difficulty in reconciling the charter with the constitutional provision, when we take into consideration the probable object of the charter provision, and consider what the language employed therein had reference to.

It will be observed that the constitution requires propositions of this kind to be submitted to a vote at an election *to be held for that purpose.* This is, in effect, providing a special election for the submission of questions of this kind, and if all the requirements of a special election are met, as we understand they were met in this case, by giving proper notice, etc., the fact that for the sake of economy the election was held on the same day that a general city election was held, and that the same ballots were used, does not make it a general election, or take it out of the provision of the constitution above quoted, viz., that such proposition must be submitted at an election *to be held for that purpose;* but that the election on the special proposition being so held is merely an incident not affecting in any manner its distinct purpose or character. The constituiton, it will be noted, does not provide for either general or special elections so termed, but provides only for an election to be held for that purpose, and that purpose, of course, is a special purpose. The provision in the charter that such proposition shall have then received the assent of three-fifths of the voters voting at such election, construed with reference to the constitutional provision, evidently means three-fifths of the voters who are expressing an opinion on the question discussed in the ordinance; and the question discussed in the ordinance was the question of the loan and the issuance of the bonds. This was not an ordinance providing for a general election, and

discussing propositions with relation to other phases of such election and other propositions upon which the citizens were called upon to vote, but the whole subject-matter discussed was the subject of the loan and the issuance of the bonds. When the ordinance continuing says, "and in case such three-fifths of the voters are in favor of such loan, the city council may," etc., it evidently refers to the three-fifths of the voters voting upon the proposition under discussion; and while the language employed might under some certain circumstances be subject to another construction, it does not preclude the construction which we have placed upon it.

The result of the construction contended for by appellant, instead of making the test of the will of the people certain, would make it uncertain and dependent upon circumstances unconnected with the expression of the people on this subject. This thought is clearly expressed by the learned judge who tried this cause, in the following words:

"A different rule would lead to some novel and certainly unexpected results. The council had power to submit such question at either a general or a special election. At a special election the question whether the proposition had been carried would necessarily be determined solely by counting the votes for and against it. At a general election it would inevitably be determined in part, at least, by the vote upon some other or possibly a dozen wholly different matters. So that the rule for ascertaining whether a given proposition had been adopted or not would not be the fixed rule prescribed by the constitution, nor even by a definite rule found in the charter, but by a variable measure dependent partly on the charter and partly on the action of the council. Such was certainly not the intention of the constitution, nor, as I conceive, could it have been contemplated by the makers of the city charter."

We have not overlooked the large list of authorities cited by the appellant, notably the cases from California, but from an examination of them it is ascertainable that most of them, at least, were decided under provisions of the constitution

and charter provisions different from the ones under discussion, and many of the cases cited in those cases with approval where the decisions were in harmony with this decision cannot be distinguished from the case at bar. Some few cases we think are in point, but it does not seem to us that the reasoning is logical or the conclusions reached necessary. But the many cases decided by this court, while possibly the exact question discussed here was not raised, all tend to sustain the legality of the election called in question; and especially the case of *Metcalfe v. Seattle,* 1 Wash. 297, 29 Pac. 1010. There it was held that the majority of three-fifths of the voters necessary to carry an election for the increase of municipal indebtedness, above one and one-half per cent of the assessment roll, is three-fifths of those persons who actually vote at the election, and not three-fifths of all those who may have the right to vote thereat. In discussing this question, cases were approvingly cited which were as strong as the case at bar, notably the case of *Carroll County v. Smith,* 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517, where the United States supreme court construed a constitutional provision of the state of Mississippi, to the effect that the legislature should authorize no county to aid any railroad company unless two-thirds of the qualified voters of such county at a special election or regular election to be held therein shall assent thereto, to mean two-thirds of the qualified voters present and voting at the election in favor of the proposition as determined by the official return of the result, the court in that instance saying: "In that connection a voter is one who votes; not one who, although qualified to vote, does not vote." It seems to us that the language of the Mississippi constitution, "unless two-thirds of the qualified voters of such county," etc., is as conclusive that all the qualified voters of the county must be counted as is the language of the charter provision in this case that all the voters voting at such election shall be counted. We said, in commenting upon that case:

"This decision of the supreme court but followed its earlier decisions in similar cases, viz.: *St. Joseph Township v. Rogers,* 16 Wall. 644, and *County of Cass v. Johnston,* 95 U. S. 360. In the last named case the constitution of Missouri prohibited townships from aiding railroad companies 'unless two-thirds of the qualified voters of the . . . town, at a regular or special election to be held therein, shall assent thereto,' which is identically the same language, slightly transposed, as that of the Mississippi constitution, above quoted. But what was known as the 'Township Aid Act' of Missouri, approved March 23, 1898, authorized townships to subscribe to the capital stock of railroad companies 'whenever two-thirds of the qualified voters of the township, voting at an election called for that purpose, shall vote in favor of the subscription;' and it will be noted that the language of this 'Township Aid Act,' 'voters of the township voting,' is precisely the same as that of our constitution, 'voters therein voting.' In that case the parties and the court agreed in construing the meaning of the legislative provision to be what we hold it to be here, that the majority meant was a majority of those who voted."

In this case we hold that the language "without the assent of three-fifths of the voters therein voting at an election to be held for that purpose" means at an election held for the purpose of voting upon this proposition, and not for the purpose of voting on manifold propositions that may be submitted at a general election; and that the fact that the election was held at the same time and with an election for other purposes does not affect in any manner the count on the number of votes cast for the purpose of determining the proposition submitted, viz., the proposition of indebtedness. This contention is also in harmony with the spirit of the decision rendered by this court in *Strain v. Young,* 25 Wash. 578, 66 Pac. 64, where it was held that a statute differing from the constitution, but which was enacted in pursuance of the constitution, must be held to mean the same as the constitution, and where it was further said:

"If other voters, who had the opportunity to exercise the

6—43 WASH

power of the ballot, declined to do so, they cannot now complain upon any principle of right or justice. Voters should be sufficiently interested in the public welfare to go to the polls at the time of an election and vote upon the propositions submitted. If they fail to do so, then, under our interpretation of the constitution, those who actually do the voting upon propositions submitted must determine them."

The judgment is affirmed.

MOUNT, C. J., CROW, ROOT, HADLEY, FULLERTON, and RUDKIN, JJ., concur.