[No. 6620.   Decided March 27, 1908.]

THE STATE OF WASHINGTON, *on the Relation of Wm. T. Milliken et al., Appellant*, v. BOARD OF COMMISSIONERS OF SPOKANE COUNTY, *Respondent.*[1]

ELECTIONS — MAJORITY—STATUTES —CONSTRUCTION — COUNTIES — TOWNSHIP ORGANIZATION. Const. art. 2, § 4, providing for the establishment of township organization "whenever a majority of the qualified electors of such county voting at a general election shall so determine" does not authorize township organization upon a majority of those voting upon the question, although the legislature so construed the clause in Laws 1895, p. 473, but only upon a majority of the total votes cast at the election.

Appeal from an order of the superior court for Spokane county, Huneke, J., entered January 2, 1907, denying a writ of mandamus, after a trial on the merits before the court without a jury. Affirmed.

*William E. Richardson* and *Crow & Richardson*, for appellant, cited: *Walker v. Oswald*, 68 Md. 146; *Sanford v. Prentice*, 28 Wis. 358; *Gillespie v. Palmer*, 20 Wis. 572; *People ex rel. Furman v. Clute*, 50 N. Y. 451, 10 Am. Rep. 508; *County of Cass v. Johnston*, 95 U. S. 360, 24 L. Ed.

[1]Reported in 94 Pac. 897.

416; *St. Joseph Township v. Rogers,* 16 Wall. 644, 21 L. Ed. 328; *Reiger v. Commissioners,* 70 N. C. 319; *Metcalfe v. Seattle,* 1 Wash. 297, 29 Pac. 1010; *Strain v. Young,* 25 Wash. 578, 66 Pac. 64; *Fox v. Seattle,* 43 Wash. 74, 86 Pac. 379; *Montgomery County Fiscal Court v. Trimble,* 104 Ky. App. 629, 47 S. W. 773.

*Richard M. Barnhart* and *A. J. Laughon,* for respondent, cited: *State ex rel. Jones v. Lancaster County Comr's,* 6 Neb. 474; *State v. Babcock,* 17 Neb. 188, 22 N. W. 372; *People ex rel. Davenport v. Brown,* 11 Ill. 479; *Bryan v. Stephenson,* 50 Neb. 620, 70 N. W. 252, 35 L. R. A. 752; *State v. Langlie,* 5 N. D. 594, 67 N. W. 958, 32 L. R. A. 723; *State ex rel. Douglas County v. Cornell,* 53 Neb. 556, 74 N. W. 59, 68 Am. St. 629, 39 L. R. A. 513; *State v. Foraker,* 46 Ohio St. 677, 23 N. E. 491, 6 L. R. A. 422; *People v. Berkeley,* 102 Cal. 298, 36 Pac. 591, 23 L. R. A. 838; *State v. Francis,* 95 Mo. 44, 8 S. W. 1; *State v. Winkelmeier,* 35 Mo. 103; *State ex rel. Dobbins v. Sutterfield,* 54 Mo. 391; *State ex rel. Woodson v. Brassfield,* 67 Mo. 331; *State ex rel. Allen v. Mayor of St. Louis,* 73 Mo. 435; *People ex rel. Wheat v. Wiant,* 48 Ill. 263; *Enyart v. Trustees of Hanover Township,* 25 Ohio St. 618; *State v. Swift,* 69 Ind. 505; *Bayard v. Klinge,* 16 Minn. 249; *Green v. State Board of Canvassers,* 5 Idaho 130, 47 Pac. 259, 95 Am. St. 169; *State ex rel. Litson v. McGowan,* 138 Mo. 187, 39 S. W. 771; *State ex rel. McClurg v. Powell,* 77 Miss. 543, 27 South. 927, 48 L. R. A. 652; *Stebbins v. Judge of Superior Court,* 108 Mich. 693, 66 N. W. 594.

MOUNT, J.—This appeal is from an order of the lower court refusing to grant a writ of mandate requiring the board of county commissioners of Spokane county to divide that county into township organization. It appears from the petition of the relators that, at the regular general election held in November, 1906, the board of county commis-

sioners of Spokane county duly submitted to the voters of that county the question of adopting township organization, as provided for by the act of March 23, 1895, Laws 1895, p. 472. At this election the total number of votes cast in Spokane county was 11,373. The total number in favor of township organization was 3,585, and against was 820. Thereupon the board of county commissioners declined to divide the surveyed portion of the county outside of incorporated cities and towns into organized townships; whereupon this action was begun, and the trial court refused the writ upon the ground that a majority of the qualified voters voting at the general election did not vote in favor of the question. The only point in the case is, whether the constitution requires a majority of the electors voting at the election, or a majority of those voting on the question. The constitutional provision is as follows:

"The legislature shall establish a system of county government, which shall be uniform throughout the state, and by general laws shall provide for township organization, under which any county may organize whenever a majority of the qualified electors of such county voting at a general election shall so determine." Const. art. 2, § 4.

The act of 1895, passed pursuant to this constitutional provision, contains a provision as follows:

"Should the majority of the votes cast on the question of township organization be in favor thereof, it shall be the duty of the board of county commissioners, at their next meeting after such election, or as soon thereafter as practicable, to divide all the surveyed portion of the county, outside of incorporated cities, towns and villages, into organized townships." Laws 1895, p. 473, § 4.

It is conceded that a majority of the votes cast on the question were in favor of township organization; but it is contended by the respondent that the constitution requires a majority of the qualified voters of the county voting at the election, and that the act of 1895 should be construed to ac-

cord with the constitution in this respect.   The wording of
the constitutional provision above quoted seems plain.   It is:

"The legislature  .   .   .   by general laws shall provide
for township organization  .   .   .   whenever a majority of
the qualified electors of such county voting at a general elec-
tion shall so determine."

These words mean what they say.   They seem too plain
for construction, and we should not notice them further were
it not for the fact that the legislature, by the provision of
the act of 1895 above quoted, seems to have construed the
language to mean what it does not say, and to the effect that
where a majority of the votes cast "on the question" be in
favor thereof, then the county commissioners shall provide for
township organization.   This court, in *Metcalfe v. Seattle*,
1 Wash. 297, 29 Pac. 1010, considering the provisions of
§ 6, art. 8, of the constitution, that no city shall become in-
debted to exceed one and one-half per centum of the taxable
property therein, "without the assent of three-fifths of the
voters voting at an election to be held for that purpose," held
that this meant three-fifths of the voters actually voting at
the election, exclusive of those who were entitled to vote; and
in *Strain v. Young*, 25 Wash. 578, 66 Pac. 64, where the
same question was submitted at a general election and the
proper construction of this provision of the constitution again
came before this court, we held that the same provision was
satisfied by a majority of three-fifths of the voters who voted
*on the question;* and later, in  *Fox v. Seattle*, 43 Wash. 74,
86 Pac. 379, where there was a question as to the meaning of
the provision of the city charter which related to this same
section of the state constitution, we held that the charter and
the constitution required the assent of three-fifths of the
voters voting on the question, and that the clause "three-fifths
of the voters therein voting at an election to be held for that
purpose," means an election held for that particular purpose
even though the vote was taken at a general election.   The
provision of the constitution considered in each of these cases

is materially different from the language under consideration in this case. The language here is, "Whenever a majority of the qualified electors of such county voting at a general election shall so determine;" not "voting at an election to be held for that purpose," or "voting on the proposition," or "upon that question," or "thereon," as is stated in other places in the constitution, but *voting at a general election.*

The framers of the constitution used different words to express the same idea in different provisions of the constitution, but words used to express the same idea, though different, are all definite and clearly express the idea intended. For example, in § 3, art. 8, relating to state indebtedness, the constitution provides: "No such law shall take effect, until it shall, at a general election, have been submitted to the people and have received a majority of all the votes *cast for and against it* at such election." And § 2 of art. 11 provides: "No county seat shall be removed unless three-fifths of the qualified electors of the county *voting on the proposition* at a general election shall vote in favor of such removal, and three-fifths of all votes cast *on the proposition* shall be required to relocate a county seat." Section 1, art. 14, provides: "A majority of all the votes cast at said election upon *said question,* shall be necessary to determine the permanent location of the seat of government for the state." Section 2, art. 14, provides: "The location thereof shall not thereafter be changed except by a vote of two-thirds of all the qualified electors of the state voting *on that question,* at a general election, at which the question of location of the seat of government shall have been submitted by the legislature." Section 1, art. 23, provides: "Any amendment or amendments to this constitution may be proposed  .  .  .  and be submitted to the qualified electors of the state for their approval, at the next general election; and if the people approve and ratify such amendment or amendments, by a majority of the electors *voting* thereon, the same shall become a part of the constitution." The italicized words in these provisions show clearly

what votes were to be considered in determining the majority. Section 4, art. 11, provides: "The legislature  .  .  .  shall provide for township organization  .  .  .  whenever a majority of the qualified electors of such county voting *at a general election* shall so determine." Section 2, art. 23, provides: "Whenever two-thirds of the members elected to each branch of the legislature shall deem it necessary to call a convention to revise or amend this constitution, they shall recommend to the electors to vote at the next general election for or against a convention; and if a majority of all electors voting *at said election* shall have voted for a convention, the legislature shall at the next session provide by law for calling the same." These two sections of the constitution are definite and certain; they convey the idea which the framers of the constitution intended to convey, and the whole thereof. When we consider all these provisions of the constitution and see how specific and definite each section is, it seems clear that the framers meant exactly what they said in each provision, and that when they used the words, "Whenever a majority of the qualified electors of such county voting *at a general election* shall so determine," found in art. 11, § 4, they meant a majority of the electors voting *at a general election* irrespective of the questions upon which the vote was taken. Otherwise it would have been stated in this as it was in other sections.

Numerous cases are cited in the briefs, some upholding and others opposed to the construction we have placed on this provision of our constitution. We think we are not justified in extending this opinion so as to comment on, or quote from, these cases. · The question is merely one of construction, upon which cited cases throw little light except in stating general rules. We are satisfied the lower court placed the right construction upon the constitutional provision under consideration, and the judgment must therefore be affirmed.

HADLEY, C. J., FULLERTON, ROOT, RUDKIN, CROW, and DUNBAR, JJ., concur.