STATE OF MONTANA EX REL., JOHN T. WILLIAMS
ET AL., RESPONDENTS, v. JOHN W. MAYHEW
ET AL., APPELLANTS.

[Submitted March 28, 1898. Decided April 18, 1898.]

*New Counties—Appointment of Officers.*

NEW COUNTIES—*Appointment of Officers.*—The Legislative Assembly, having the power
  to create new counties, may, as an incident to the creation, appoint provisionally, in
  the act creating a new county, the officers, including commissioners.
2.  SAME.—Constitution, Article 16, § 4, provides that there shall be elected in each
  county, county commissioners to serve for a term of four years. Act of Feb. 16,
  1893, created Ravalli county, and named three persons as county commissioners to
  serve until the next general election in 1894. *Held*, that the officers then elected were
  entitled to serve for the full constitutional term, which begins at the first general
  election succeeding the creation of the county, and is not computed quadrenially
  from the adoption of the constitution in 1889.
3.  SAME.—Where the act creating a new county also named persons to act, who did
  qualify and act as its officers until their successors were elected, no vacancy in such
  offices existed on the passage of the act creating them.

*Appeal from District Court, Ravalli County, F. H. Woody, Judge.*

QUO WARRANTO by the state, on the relation of John T.
Williams and others, against John W. Mayhew and others.
From judgment for relators, defendants appeal. Reversed.

Statement of the case by the justice delivering the opinion.

This is a quo warranto proceeding. Both parties to the
controversy claim to be the rightful commissioners of the
county of Ravalli, and this proceeding was instituted to deter-
mine as to which of the parties were entitled under the law
to exercise the duties of the office of commissioners in that
county.

From the history of the case as disclosed by the record it
appears that Ravalli county was created by an act of the legis-
lative assembly approved February 16, 1893, which act took
effect on the 1st day of April thereafter. The act filled all
the offices of the county by naming persons for each office,

including that of county commissioner. The county, as organized, was attached to the Fourth judicial district for judicial purposes. J. M. Johnson, B. S. Chaffin and Abe Mittower were named in the act creating the county as its first commissioners authorized by the act to serve, and did serve until January 7, 1895. At the general election held in said county on the 8th day of November, 1894, the defendants in this proceeding were elected county commissioners to succeed those named in the act creating the county. The defendants qualified as such commissioners on the 7th day of January, 1895, and were holding such offices when this action was commenced. Refusing to admit plaintiffs into office, the defendants claiming that their terms did not expire until November 8, 1898, this suit was commenced, to determine the controversy as to who are the legal commissioners of Ravalli county.

On the trial the defendants filed a general demurrer to the complaint, which was overruled, and, the defendants declining to further plead, judgment was rendered by the court that the plaintiffs were the duly and regularly elected commissioners of said county. From this judgment defendants appeal.

*Robt. O'Hara and C. B. Nolan*, for Appellants.

*A. J. Craven and C. D. Calkins*, for Respondents.

PEMBERTON, C. J. The material question involved in this appeal, and the one that has given us the most serious trouble and concern, is as to the power of the legislative assembly to fill the offices provisionally in a county created by that body, by naming the respective officers in the act itself. The district court did not pass upon this question, saying it was unnecessary, in its view of other legal questions involved. But the question is presented in both briefs, and we think it the pivotal one presented for determination.

The district court held, substantially, that all commissioners are required by the constitution to be elected every four years, commencing the year of the admission of the state into the Union; and that this rule applies to new counties as well as

those in existence at the time of the adoption of the constitu-
tion. According to this rule, whenever it is proposed to elect
commissioners, it is necessary to go back to the date of the
admission of the state, and count four years forward, and then
four years more, and so on, to determine whether the time
has arrived for such election. It is further held by the dis-
trict court that this rule of computation applies also to ap-
pointments to fill vacancies in the office of county commis-
sioner. Proceeding upon this rule and theory, the district
court held that, whether the legislative assembly had the power
or not to appoint or elect the county commissioners of the
county by the act creating it, such commissioners were only
so elected or appointed to fill an unexpired "commissioner's
term," and that when the original commissioners had served
the time prescribed by the act creating the county, and went
out of office, they still left a part of the same unexpired con-
stitutional term to be filled by the defendants, holding, of
course, that the election of commissioners in the year 1894
was void, because by this theory it is insisted no election for
commissioners could legally occur until the general election in
November, 1896, when plaintiffs were elected. This theory
assumes, of course, that when the legislative assembly created
Ravalli county, and filled the several county offices by the act
which took effect April 1, 1893, all the offices were, in law,
vacant. The district court reasons that the term of the com-
missioners of Ravalli county, notwithstanding the county was
created in 1893, commenced, by the terms of the constitution,
in 1892; hence the first and second sets of commissioners were,
while serving, filling parts of an unexpired term.

In support of this view the district court says: "Therefore
the court holds that the term for which county commissioners
were elected was four years, neither more nor less; that the
first term commenced on the 8th day of November, 1889, the
day on which the state was admitted into the Union, and ended
on the 8th day of November, 1893, and that the second term
commenced on the 8th day of November, 1893, and ended on
the 8th day of November, 1897; that these terms were general

and uniform throughout all the counties of the state; that this term of office applied as well to new counties as to the old ones; that in a new county, created after a current term had commenced to run, the persons appointed to fill the office of county commissioners would hold their offices for the remainder of the unexpired current term. Ravalli county was created and came into existence on the 1st day of April, 1893. If the county had been created without the act creating it naming the persons to fill the office of county commissioners, there certainly would have been a vacancy which the district judge of the district in which the county was situated could have filled by appointment, and such appointees would have held for the remainder of the then current term, to-wit, to November 8, 1893; and, as a new current term would have commenced on November 8, 1893, and as no election could have been held until November, 1896, there would have been a vacancy, and it would have been the duty of the district judge to have filled the vacancies for such term. If the legislature had the power to appoint (a question that this court does not undertake to decide), certainly its appointees would stand on the same footing as the appointees of the district judge, and would hold for the same term."

The district court bases its views upon Section 4, Art. 16, Section 5, Art. 16, and subdivision 9, ord. 2, of the constitution of the state. We raise no question that, as a general proposition relating to counties in existence, the legislative assembly has no power to elect or appoint county officers by an act or otherwise. To so hold would be to ignore and do violence to the theory of local self-government, which is conceded to be the fundamental principle—the corner stone— supporting our whole system of government. But we are not dealing with general principles or ordinary conditions. We are now concerned with exceptional rules and conditions. All rules and laws have their exceptions. These exceptions spring from the extraordinary facts and conditions that surround the subjects and actors involved.

Let us, then, return to the main question involved here.

Did the legislative assembly have the power to appoint or name provisionally the county officers of the county, including county commissioners, in and by the act creating Ravalli county? It is and must be conceded that the legislative assembly has the power to create new counties.    "The creation of counties is an act of the sovereign power of the state, and is not based on the particular solicitation, consent or concurrent action of the people who inhabit them. As a general rule, the power of the legislature in the division of the state into counties is absolute, and it may alter, modify or destroy them, as the public good may require." (Am. and Eng. Enc. Law, Vol. 4 (1st Ed.) 345, and authorities cited in notes.)

But what is meant by creating a county by the legislative assembly? It means more than forming and defining it geographically.

In *People* v. *McGuire*, 32 Cal. 141, the court says: "To constitute a county, something more is required than to define its boundaries. A local government must be provided, and the creation of the county is not accomplished until both these things have been done in the appointed mode."

This amplification of what is meant by creating new counties is most reasonable and just. It certainly seems that something more than laying out the boundaries and naming the offices is necessary to be done before it can be truthfully said that a county has been created. Such a creature would be a lifeless and useless thing until inspired with motion and power and means to act in fulfilling the purpose of its creation. When it is said that a county has been created, it is, and ought certainly to be, understood that a municipality has been organized with power and means to aid the state in administering its political affairs, and in promoting the welfare of the people and best interests of the commonwealth. A county cannot be said to be created by the sovereign power until it is endowed with the power and means to aid in these important matters of the state.

In *People* v. *Hurlbut*, 24 Mich. 44, 9 Amer. Rep. 103, the important question here involved was ably and

elaborately discussed by that great constitutional lawyer, Judge Cooley. The legislature of Michigan had passed a law "to establish a board of public works in and for the city of Detroit." The members or officers of the board were appointed by the legislature in the act itself, just as was done in the case at bar, except that the Michigan law appointed permanent officers, while the act creating Ravalli county appointed the officers only until the next election, or provisionally. That eminent jurist, Judge Cooley, discusses in this case the whole doctrine of local self-government, and the right of the people of Detroit, under the constitution of the state, to elect their local officers, or have them appointed, in case of vacancies, by another power than the legislature, and arrives at the conclusion that the action of the legislature, in so far as it attempted to appoint permanent officers for the city of Detroit was void, but held that such appointments were only void in so far as they were permanent, and were good as provisional appointments.

As determining this important question, we quote at length the forcible language of this great judge. He says: "So far, then, as the act in question undertakes to fill the new offices with permanent appointees, it cannot be sustained, either on general principles or on the words of the constitution. It may, nevertheless, not be wholly void. I have no doubt it was entirely competent for the legislature to abolish the old boards and provide for a new one to take the place of all. That would be but the ordinary exercise of legislative supervision and control in matters of municipal regulation. I think, also, that the legislature might make provisional appointments to put the new system in operation. The right to do this appears to me to be incident to the right to confer and recall corporate power, and rests upon the same ground as the right to provide for the organization of the municipal corporation in the first place, for the apportionment of its property and debts if its territory should be divided and organized into two, or for the winding up of its concerns if the charter should be taken away. There is no doubt of the right of the state to do any of these

things, nor by virtue of any general authority to take to itself the management of the local concerns, but because the inauguration and modification of local government can only be provided for without confusion and injustice, by the aid of the guiding and assisting hand of the authority that creates and modifies. The right in the state is a right not to run and operate the machinery of local government, but to provide for and put it in motion. It corresponds to the authority which constitutional conventions sometimes find it needful to exercise when they prescribe the agencies by means of which the new constitution they adopt is to be made to displace the old. * * * But these appointments may, nevertheless, be good provisionally. A legislative act is not void for excess of authority at one point, unless the excess is in a particular which precludes giving effect to the rest according to the obvious intent. In this case the excess can hardly be held vital, for we must suppose the object of the legislature, in making the first appointments, was not to appropriate patronage to itself, but only to secure the organization of the new system without confusion; otherwise they would have retained the choice of commissioners permanently. The appointment of these men, then, the conferring upon them of the enumerated powers, and the displacement of old officers, were all entirely within legislative authority. The excess of authority was only in providing that the appointments made should continue for two, four, six and eight years. Now, suppose the legislature had expressly made the appointments provisional, and had then provided that two, four, six and eight years hence new appointments should be made, and that in the meantime the common council might fill any vacancies that might occur, would the whole act be void because it failed to fix a time when the powers of the provisional appointees should cease? I think not. The act was not passed to give four men an office; their appointment was merely incidental to the main purpose."

In Michigan the constitution provided for the election or appointment of such officers otherwise than by the legislature.

But the supreme court held that such constitutional provision did not prevent the legislature from appointing such officers provisionally. The same principle is involved here. While our constitution provides that county commissioners shall be elected or appointed otherwise than by the legislature, it does not mean that the legislature may not appoint them provisionally, when new counties are created, as an incident to their creation, and for the purpose of putting them in motion.

Meecham, in his work on Public Offices and Officers (Section 123), holds that for the purpose of primary organization the legislature may appoint the local officers provisionally. It has frequently been held by the courts that in creating new counties or towns, or political municipalities or boards, the legislature might elect or appoint, or provide for the election or appointment of, the officers necessary to put such governmental agencies or political municipalities in motion and operation in a manner different from that provided by the constitution for the election or appointment of such officers generally. (See, also, *Attorney General* v. *Weimer*, 59 Mich. 580, 26 N. W. 773; *State* v. *Swift*, 11 Nev. 128; *State ex rel. Clarke* v. *Irwin*, 5 Nev. 111; *Sabin* v. *Curtis* (Idaho) 32 Pac. 1131; *People* v. *Freeman*, 80 Cal. 233, 22 Pac. 173; *State* v. *Seymour*, 35 N. J. Law, 47.) These authorities proceed upon the theory that the creation of these new municipalities is more or less a matter of emergency, in which case the legislature has unlimited power to decide the propriety of action, as well as the sole power to create, and in the exercise of such power in creating such political municipalities—the creation of which is the principal object of legislation—may appoint, or provide for the election or appointment of, provisional officers, in a manner different from that provided by the constitution for the election or appointment of such officers generally, as an incident to the power to create. We are satisfied that this view of the question is sound in law and reason, and that it will aid in the administration of the political affairs of the state if applied in all cases like the one under consideration.

We think, therefore, that the commissioners appointed by

the act creating Ravalli county were not *de facto* officers merely, but were such *de jure.*

The contention that the original commissioners of the county and their immediate successors, the defendants, were and are filling out an unexpired term or vacancy is, we think, untenable. We are unable to find any support for the theory that by the terms or spirit of the constitution commissioners should always be elected in all the counties, old and new, at the same time, and that time every four years from the date of the adoption of the constitution. We see no valid reason for such construction of the constitution in this respect. What good can come to the state, or any part of it, from having commissioners elected throughout the state at the same time? What harm can result if a new county shall elect its commissioners at a different time from that at which the old counties elect? Nor can we agree with counsel that there were vacancies in any of the county offices in the county at and immediately after the date when the act took effect creating Ravalli county. The same law that created the county and its several offices named or appointed the incumbent for each office. The moment the office was actually created, there stood the officer to qualify and take possession. It is not reported that there were any derelicts. If any officers named had refused or failed to qualify, then there would have been a vacancy.

We think, therefore, that the legislature had the power to fill provisionally the offices created by the act organizing Ravalli county, by naming the several officers in the act, including commissioners, and that the commissioners so named in the act held for the time prescribed in the act, and that at the end of that time, to-wit, at the next general election thereafter, it was lawful and proper, under the constitution, to elect their successors, who would be entitled to hold their offices for four years, the term for which commissioners hold office under the constitution from the time of their qualification. To hold otherwise would be to hold the act creating Ravalli county unconstitutional and void in part. We may not rightly do so if we can consistently find support in the fundamental law of

the state for such legislative action.    We think the conclusion we have reached well supported by authority and reason, and believe it will produce beneficial results to the state.

The judgment of the district court appealed from is reversed, and the cause remanded, with directions to enter judgment in favor of the defendants to the effect that they are entitled to the offices of county commissioners of Ravalli county.

*Reversed and Remanded.*

HUNT and PIGOTT, JJ., concur.