[No. 3853.   Decided April 10, 1901.]

A. S. FARQUHARSON, *Appellant,* v. D. W. YEARGIN *et al.,* as *County Commissioners of Ferry County, Respondents.*

CREATION OF NEW COUNTY — NECESSARY POPULATION — LEGISLATIVE DETERMINATION — PRESUMPTIONS.

Where a new county has been set off from another county, under art. 11, § 3, of the constitution prohibiting the formation of new counties containing a less population than 2,000, the failure of the legislative records to recite the fact that such new county contains a population of not less than 2,000 would not render the creation of such county illegal, since the legal presumption is that this fact must have been proved to the satisfaction of the legislature and that the passage of the act itself is equivalent to a finding of the necessary facts.

SAME — APPOINTMENT OF PROVISIONAL COUNTY OFFICERS.

Although art. 11, § 5, of the constitution provides for a general and uniform law governing the elections of county officers, a provision in Laws 1899, p. 26, § 5, authorizing the governor to appoint the county commissioners in the newly created county of Ferry, and that they should fill by appointment all other county offices, is not unconstitutional, since the power to fill county offices provisionally in new counties is a necessary incident of the legislative power to create new counties.

COUNTY INDEBTEDNESS — CONSTITUTIONAL LIMIT — COMPULSORY OBLI-GATIONS — SALARIES.

Warrants issued in payment of salaries of county officers, although in excess of the limit of one and one-half per cent. of the assessed valuation of property, are valid, on the ground of being compulsory obligations imposed upon the county by the constitution and laws of the state.

SAME — CONSTRUCTION OF NEW COURT HOUSE.

Warrants issued in payment for the construction of a county court house properly fall under the rule of compulsory obligations

when it appears that, at the time such indebtedness was in-
curred, the county seat was a new mining camp composed of
small frame cabins and tents, the town having been recently
destroyed by fire; and that it was necessary, for the proper and
orderly administration of county affairs, for the protection and
safe keeping of the public records, and in order to provide a
place to hold court for said county, that a court house should be
constructed, since it may be fairly inferred from existing condi-
tions that no suitable building could otherwise be had.

Appeal from Superior Court, Ferry County.—Hon.
CHARLES H. NEAL, Judge. Affirmed.

*Charles P. Bennett,* for appellant.

*Jesseph & Jesseph,* for respondents.

The opinion of the court was delivered by

WHITE, J.—This action was commenced by plaintiff
against the defendant for the purpose of having the
defendants enjoined from issuing county bonds to the
amount of $60,000, the purpose of such bond issue being
to fund outstanding county warrants of Ferry county.
Ferry county was created by the act of the legislature of
the state of Washington on the 21st day of February,
1899. On March 11, 1899, the governor appointed a
board of county commissioners for the newly created
county, as provided in the act creating the county.

The assessed valuation of the property in the newly
created county was $408,513, on October 7, 1899, such
valuation being agreed upon by the officers of Ferry and
Stevens counties, and was based upon the assessment of
Stevens county.

Ferry county was formed out of part of the territory
theretofore included in Stevens county, and the act organ-
izing Ferry county provided that Ferry county should as-
sume and pay to Stevens county its just proportion of the
debts of Stevens county in the proportion that the assessed

valuation of Ferry county bore to the valuation of the whole of Stevens county. Ferry county, as provided in art. 11, § 3, of the constitution, was not to be charged with any debt or liability incurred in the purchase of any county property or building which should fall within and be retained by Stevens county, and the same provision applied to Stevens county as to any county property or buildings in Ferry county. The auditor of Ferry county .and the auditor of Stevens county were to apportion the indebtedness that Ferry county was to pay, and the county commissioners of Ferry county were to order warrants drawn for such indebtedness in favor of Stevens county.

Between the 21st day of March, 1899, and the 7th day of October, 1899, county warrants were issued to the amount of $23,323.99. The cash receipts of the county during this period from licenses and fines was $10,573.10. Add to the cash received, one and one-half per cent. of the assessed valuation, $6,127.69, and deduct the amount from the amount of warrants issued during this period, and we have warrants issued in excess of said amount to the amount of $6,623.20.

That of the warrants to the amount of $6,623.20 in excess of the constitutional limit of indebtedness of Ferry county there remain unpaid at this time warrants to the amount of $2,136.71. That of the said amount of $23,-323.99 of warrants issued $15,303.56 were issued in payment for a county court house for said county of Ferry, and furniture for the same; $4,156 being for blank books, and $4,233.50 being the amount paid for transcribing records from Stevens county records, as required by the act creating the new county. Between the 11th day of March, 1899, and the 7th day of October, 1899, Ferry county acquired assets to the amount of $15,303.56 in

addition to the cash received. Republic, the county seat
of Ferry county, was, at the time this indebtedness was
incurred, a new mining camp composed of small frame
cabins and tents, the town having been destroyed by fire
on the 3d day of June, 1899, and it was necessary, for
the orderly and proper administration of county affairs,
for the protection and safekeeping of the public records,
and in order to provide a place to hold court for said
county, to construct a court house.

On the 9th of July, 1900, when the board of county
commissioners of Ferry county adopted the resolution to
issue funding bonds in the sum of $60,000, the assessed
valuation of the taxable property in Ferry county, as
shown by the last assessment for state and county pur-
poses, was $1,917,819, and the outstanding indebtedness
of the county about $60,000, all of which was in outstand-
ing warrants; the said sum of $2,136.71 being part of
said warrant indebtedness, and the only warrants the va-
lidity of which is questioned on this appeal. No vote of
the electors of Ferry county has ever been had validating
said last mentioned indebtedness, or assenting to the same.
The court below, on the above state of facts, denied the
injunction prayed for, and entered final judgment. From
the judgment of the court denying the relief prayed for
this appeal is prosecuted. It is urged by the appellant
that the proposed bond issue is illegal, because it nowhere
appears in the records of the lower house or the senate
that the territory proposed to be set off as Ferry county
had, at the time of presenting the petition to create such
new county, a population of two thousand, as required by
§ 3 of art. 11 of the constitution of the state. The pro-
vision cited declares that "No new county shall be estab-
lished which shall reduce any county to a population of
less than four thousand, nor shall a new county be formed

containing a less population than two thousand." The creation of a new county is an exercise of legislative power subject to the limitations referred to. Before this power can be rightfully exercised, it must be made to appear to the legislature affirmatively that the new county contains a population of not less than two thousand, and that by the creation of the new county the population of the county from which the new county is taken is not reduced to less than four thousand. When these facts are made to appear to the satisfaction of the legislature, then the act creating the proposed new county may be passed. The legal presumption, therefore, is that, when the act creating the county of Ferry was passed, these facts had been proved to the satisfaction of the legislature; otherwise, that body would not and could not have passed the act. All of the members of the legislature were sworn to support the constitution of the state, and it is not to be presumed that the legislature would violate their oath of office by passing the act, without the proof necessary to enable them to do so. The act appears to have been approved by the governor, and the same presumption attaches to his act of approval. As was said by the supreme court of West Virginia in *Lusher v. Scites,* 4 W. Va. 11:

"To exercise the power, the legislature must inform itself of the existence of the facts prerequisite to enable it to act on the subject. How it shall do so, and on what evidence, the legislature alone must determine; and when so determined, it must conclude further inquiry by all other departments of the government; and the final action terminating in an act of legislation in due form, must of necessity presuppose and determine all the facts prerequisite to the enactment; and that, too, as fully and as effectually as a final judgment of a competent judicial tribunal of general jurisdiction would do in like case."

We do not think that it is necessary that the records of the senate or the house should contain a recital of the facts determined by the legislature relative to population, any more than a final judgment in a court of general jurisdiction should contain a recital of the facts upon which it is based.

Courts, in considering such acts, unless contrary facts appear affirmatively in the act under consideration, must assume that legislative discretion has been properly exercised. If evidence was required of a fact, it must be supposed that it was before the legislature when the act was passed; and, if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be held equivalent to such finding. Cooley, Constitutional Limitations (5th ed.), p. 222; *State ex rel. Attorney General v. County of Dorsey,* 28 Ark. 379; *Rumsey v. People,* 19 N. Y. 48.

Section 5 of the act creating and organizing Ferry county provides that the county commissioners should be appointed by the governor (Session Laws 1899, p. 26), and that they should fill by appointment all other county offices. Such appointment of county commissioners by the governor is not in contravention of the constitution, which requires that all county officers shall be elected by the people, as these provisions do not apply to cases of emergency; such as the creating of the usual county offices, on the organization of a new county. The power to fill county offices provisionally in new counties is a necessary incident of the legislative power to create new counties, although the constitution (article 11, § 5) provides for a general and uniform law governing the elections of boards of county commissioners, sheriffs, treasurers, and other county, township, precinct, and district officers. *State ex rel. Clarke v. Irwin,* 5 Nev. 111; *State ex rel.*

*Williams v. Mayhew,* 21 Mont. 93 (52 Pac. 981); *Roche v. Jones,* 87 Va. 484 (12 S. E. 965); *In re Board of Com'rs of Johnson County,* 32 Pac. 850 (S. C.—*In re Fourth Judicial District,* 4 Wyo. 133).

It is contended that the warrants issued after the county had reached its limit of indebtedness were illegal. It appears that these warrants were issued for salary purposes, and to complete the payment upon the county court house, and aggregate $2,136.71. The warrants isued for the purpose of paying the salaries of county officers, amounting to $812.81 of this sum, clearly fall within the decision of this court in *Rauch v. Chapman,* 16 Wash. 568 (48 Pac. 253, 36 L. R. A. 407, 58 Am. St. Rep. 52), as compulsory obligations imposed upon the county by the constitution and laws of the state. At the time the court house was erected, such a county building was absolutely necessary for county officers and a proper care of the county records. Republic, the county seat, was a new mining camp, and but a short time before had been destroyed by fire. Most of the buildings were small frame cabins, none of them being suitable places to deposit the county records, or to accommodate the county offices. While, ordinarily, warrants issued in payment of money expended in building a court house would not fall under the class of compulsory obligations, the conditions existing in Republic at the time of the erection of the court house were such as to bring the warrants for the erection of this particular court house within the rule laid down in *Rauch v. Chapman, supra,* because it may be fairly inferred that no other building could be had for the purpose owing to the destruction of the town by fire.

The judgment of the court below is therefore affirmed.

REAVIS, C. J., and DUNBAR, MOUNT, FULLERTON and HADLEY, JJ., concur.