[No. 10122. Department One. February 28, 1913.]

DOUGLAS COUNTY, *Respondent*, v. GRANT COUNTY, *Appellant*.[1]

COUNTIES—DIVISION—APPORTIONMENT OF ASSETS AND OBLIGATIONS. In the absence of any statute, when a new county is created from territory of an old county, the latter retains all its assets and assumes all existing obligations.

SAME—POWERS OF LEGISLATURE. The division of counties and apportionment of assets is solely a legislative function.

COUNTIES—DIVISION—INDEBTEDNESS—APPORTIONMENT ON FORMATION OF NEW COUNTY. Upon the formation of a new county from territory of another county, under a special act complete in itself, requiring the new county to assume a certain proportion of the indebtedness of the old county but containing no provision as to the assets of the old county, the new county is not entitled to share in such assets; and the general statutes, Rem. & Bal. Code, §§ 3826, 3827, authorizing the two county auditors to agree upon the proportion of debts that the new county shall pay, have no application.

[1] Reported in 130 Pac. 366.

Appeal from a judgment of the superior court for Douglas county, Grimshaw, J., entered September 8, 1911, upon findings in favor of the plaintiff, upon the pleadings, in an action to enjoin the issuance of county warrants. Affirmed.

*Merritt, Oswald & Merritt,* for appellant.

*John W. Hanna,* for respondent.

CROW, C. J.—In 1909, Grant county was organized from a portion of Douglas county, by act of the legislature, Laws 1909, ch. 17, p. 19 (Rem. & Bal. Code, § 3780). Section 1 of the act fixed the boundaries of the new county. Section 2 reads as follows:

"The county of Grant shall assume and pay to the county of Douglas its proportion of the bonded and warrant indebtedness of Douglas county, in the proportions that the assessed valuation of that part of Grant county, lying within the present boundary of Douglas county, bears to the assessed valuation of the whole of Douglas county. The adjustment of said indebtedness shall be based on the assessment for the year 1908: . . ."

The act contains no provision relative to the apportionment or division of any property, taxes, funds, or assets of Douglas county existing at the date of division. After the organization of Grant county had been perfected, its auditor and the auditor of Douglas county, assuming to act under the authority of §§ 3826 and 3827, Rem. & Bal. Code, made a written agreement, compromise and settlement, wherein they scheduled the property, funds, real estate taxes, assets, and indebtedness of Douglas county, and as a net result finally determined that, under the sections mentioned and the act of 1909, Douglas county was indebted to Grant county in the total sum of $52,000, and that warrants upon certain funds of Douglas county should be issued to Grant county in payment thereof. Thereupon this action was commenced by Douglas county, against its auditor and against Grant county, to have the written agreement de-

clared void, and to enjoin the issuance of the warrants. Findings were made upon the pleadings and a final decree was entered enjoining the issuance of the warrants, and declaring the agreement to be null and void. Grant county has appealed.

The trial court found:

"That at the time the said act of the legislature creating said Grant county went into effect and became operative to wit, February 24, 1909, the said Douglas county had a bonded general indebtedness outstanding against it in the principal sum of $25,000, together with accrued interest thereon. . . .

"That by virtue of the provisions of the legislative act creating the county of Grant said Grant county was to pay to the county of Douglas a percentum of the indebtedness of said Douglas county, based upon the percentum of the assessed valuation of the taxable property of said Douglas county as shown by the assessed valuation of that part of Grant county lying within the boundaries of Douglas county, provided, that such indebtedness was not incurred in the purchase of any county property or in the purchase of any county building falling within or being retained by the other county; that 61.5% is the proportion of assessed valuation for the year 1908 of taxable property of the county of Douglas, which lies within the new county of Grant; that at the time of the creation of said Grant county to wit: on the 24th day of February, 1909, Douglas county was and is now the sole owner and in possession of property, moneys and assets as follows, to wit:

| | |
|---|---|
| 1 court house, jail and grounds of the value of. . | $35,000.00 |
| Furniture and fixtures in the various county offices of said court house of the total value of | 5,552.05 |
| 125 cords of wood of value of. . . . . . . . . . . . . . | 937.50 |
| Money on hand as follows: | |
| Cash in current expense fund. . . . . . . . . . . . . . . | 27,403.88 |
| Cash in road and bridge fund. . . . . . . . . . . . . . | 1,704.39 |
| Cash in game protection fund. . . . . . . . . . . . . . | 1,093.05 |
| Cash in soldier's relief fund. . . . . . . . . . . . . . . | 208.35 |
| Cash in building fund. . . . . . . . . . . . . . . . . . . | 807.47 |
| Uncollected bond redemption fund. . . . . . . . . . . | 8,386.65 |
| Uncollected building fund tax. . . . . . . . . . . . . . | 763.61 |

Uncollected taxes on real estate tax roll as follows:

Current expense fund ..................... 41,606.86
General road and bridge fund............... 9,698.77
Uncollected taxes on personal tax roll of said county as follows:
Current expense fund..................... 2,258.82
General road and bridge fund.............. 562.67

All of said described property, money and assets being in said Douglas county.

"That on the 26th day of April, A. D. 1909, defendant, T. Claud Bennett, then auditor of Douglas county, Washington, and J. H. Hill, then auditor of Grant county, Washington, made and entered into an agreement by the terms of which said agreement Douglas county was to pay to said Grant county certain sums of money as specified and set out in said agreement, a copy of which is attached to plaintiff's amended complaint, and made Exhibit I, thereof; that the said action of the said T. Claud Bennett and J. H. Hill in entering into said agreement and in awarding the payment by said Douglas county to said Grant county of any sum of money or thing of value whatsoever, or the transfer from said Douglas county to said Grant county of any part of the property, moneys or assets belonging to said Douglas county at the time of the creation of said Grant county was null and void, wholly without authority of law and in violation of the rights of said Douglas county; that the said county of Grant had no right, title, interest or lawful claim in or to the whole or any part or of any item of the property, money and assets belonging to said Douglas county at the time of the creation of said Grant county, and that said Douglas county is not indebted to said Grant county in any sum of money or thing of value whatsoever.

"That the said T. Claud Bennett, auditor of Douglas county and the said J. H. Hill, auditor of Grant county, acted without warrant or authority, in law in the purported settlement of the portion of the bonded indebtedness which Grant county was to assume and pay to Douglas county as fixed by section 2 of the act creating Grant county, and that such purported settlement is null and void.

"That there has been no valid and legal settlement of the indebtedness between said Douglas and Grant counties; that

there is no provision in the constitution or laws of the state of Washington providing for the distribution of assets between an old and new county in the event of the creation of the new county out of territory embraced wholly within the boundaries of the old county, and no provision in the constitution or statutes of the state of Washington prescribing or fixing a basis for such distribution; that the basis provided in the act creating Grant county for the ascertainment and division of the indebtedness was wholly disregarded by the auditors of the respective counties, Douglas and Grant, in the settlement entered into with reference thereto."

These findings are sustained by the admitted allegations of the pleadings, and appellant has taken exceptions to only such portions of them as might be termed conclusions of law. The question now presented is whether the findings sustain the final decree. Section 3826, Rem. & Bal. Code, provides that, "the new county shall be liable for a reasonable proportion of the debts of the county from which it is taken, and entitled to its proportion of the property of the county." Section 3827 provides that:

"The auditor of the old county shall give the auditor of the new county reasonable notice to meet him on a certain day at the county seat of the old county, or at some other convenient place, to settle upon and fix the amount which the new county shall pay. In doing so, they shall not charge either county with any share of debts arising from the erection of public buildings, or out of the construction of roads or bridges which shall be and remain, after the division, within the limits of the other county, and of the other debts they shall apportion to each county such a share of the indebtedness as may be just and equitable, taking into consideration the population of such portion of territory so forming a part of the said counties while so united, and also the relative advantages derived from the old county organization."

It will be observed that this section makes no provision for an apportionment of existing property. Calling attention to these sections, appellant contends that, in so far as this case is concerned, they are so amended by section 2 of the

creative act of 1909, that by reading them and the creative act together, they provide that Grant county shall pay its share of the indebtedness of Douglas county in proportion to the assessed valuation of 1908, and shall also be entitled to a like proportion of the property of Douglas county; that the legislature, by the general statutes above cited, has delegated to the auditors power to fix the reasonable proportion of the indebtedness upon which to base an enforcement of § 3 of art. 11 of the state constitution, which provides that:

"Every county which shall be enlarged or created from territory taken from any other county or counties shall be liable for a just proportion of the existing debts and liabilities of the county or counties from which such territory shall be taken;"

that the general law thus authorizing the auditors to fix such reasonable proportion in so far as Grant county is concerned, has been so limited by section 2 of the creative act that, in any settlement here made, the assessed valuation basis should prevail; that the settlement should be in proportion thereto; that Grant county should pay 61.5 per cent of the indebtedness, and at the same time should receive a like percentage of the property; and that as the settlement of the auditors was made upon that theory, it awards Grant county no more than the law requires.

The special act of 1909, which is of later date than the sections of Rem. & Bal. Code above mentioned, compels Grant county to assume and pay its proportion of all existing bonded and warrant indebtedness of Douglas county, and provides that the proportional assessed valuations of 1908 shall be adopted as the fixed basis for the apportionment of such indebtedness. It will be noted that the act fully meets the requirements of § 3, art. 11 of the constitution, although it does not provide that Grant county shall receive any part of the property. The well established rule of law, in the absence of any statute or any constitutional provision to the contrary, is that, when a new county is created from the

territory of an existing county, the old county will retain all assets previously owned by it, and will be subject to the burden of assuming all of its existing indebtedness. In other words, the new county will be entitled to none of the assets, nor will it be obliged to assume any of the existing indebtedness of the old county. 1 Cooley on Taxation (3d ed.), p. 414; *Laramie County v. Albany County*, 92 U. S. 307; *Tulare County v. Kings County*, 117 Cal. 195, 49 Pac. 8; *City of Wellington v. Wellington Township*, 46 Kan. 213, 26 Pac. 415; *City of Winona v. School District No. 82*, 40 Minn. 13, 41 N. W. 539, 12 Am. St. 687, 3 L. R. A. 46; *Washington County v. Weld County*, 12 Colo. 152, 20 Pac. 273.

In the year 1887, the Colorado legislature passed two acts creating the new counties of Washington and Logan, by carving territory from the existing county of Weld. These acts provided that the "present indebtedness" of Weld county should be apportioned between the new counties in proportion to the ratio of the taxable property at the time of division. Weld county had no indebtedness, but did have in its treasury a surplus of $60,000. Each of the new counties demanded its share of this surplus, in proportion to, and upon the basis of its taxable property, as specified in the act in relation to indebtedness, and brought suit to recover the same. The Colorado constitution required that each new county upon its establishment should be responsible for a "ratable proportion" of the then existing liabilities of the county or counties from which such new county should be formed; but, like unto the constitution of this state, was silent as to the distribution or division of assets belonging to the old county. In *Washington County v. Weld County*, *supra*, the supreme court of Colorado, stating these facts, held:

"In the absence of restrictive constitutional or statutory provision on the subject, when a new county is created by segregating a portion of the territory belonging to an existing county, the old county retains all assets previously owned

by it, including rights of action, funds, and other personal property; also all real estate held in proprietory right, save such, if any, as may be within the territory taken away; it likewise remains bound by its existing contracts, and is subjected to the burden of discharging all existing obligations and liabilities.    The new county receives none of the assets, and assumes none of the burdens.    Cooley Tax'n, 176, note 2; *Laramie Co. v. Albany Co.*, 92 U. S. 307; *Mount Pleasant v. Beckwith*, 100 U. S. 514.    The reasons for the foregoing doctrine are that the title to all property and ownership of all assets are vested in the old county as a corporate entity, this entity being in no way disturbed by the division of its territory and separation from it of a portion thereof; while on the other hand, all existing obligations and liabilities were incurred in its corporate capacity and name.    Therefore, while the legislature has power to divest title, and apportion property as well as indebtedness, yet, if such power be not exercised, there does not follow, as a legal sequence, either a transfer of the assets or liabilities to the new county."

Having called attention to the fact that, although the Colorado acts then under consideration provided for an enforcement of the constitutional mandate relative to indebtedness, they did not contain any provision relative to a distribution of surplus funds or property, the Colorado court further observed:

"But, in the *first* place, it will be noticed that there are no words that can be regarded as expressly granting to the new counties a right to share in the moneys on hand; *secondly,* that no basis for such apportionment is specifically named; yet, in the absence of provision in the premises, it may be doubtful if the intent to distribute the funds, admitting that such intent is shown, could be carried out.    Because the legislature adopted a certain basis for the distribution of indebtedness, it does not necessarily follow that this body intended to apply the same method to the apportionment of surplus funds."

The act creating Grant county, while complying with our constitutional mandate relative to existing indebtedness, makes no provision for an apportionment of property. Grant

county, therefore, was not entitled to receive the warrants which the auditor of Douglas county was about to issue in pursuance of the written agreement. That the division of counties and the distribution of property and assets is solely a legislative function, and that legislation to provide for such apportionment is necessary, see 11 Cyc. 357 and cases there cited. In *Laramie County v. Albany County, supra,* the supreme court of the United States, discussing the question here involved, said:

"Regulation upon the subject may be prescribed by the legislature; but, if they omit to make any provision in that regard, the presumption must be that they did not consider that any legislation in the particular case was necessary. Where the legislature does not prescribe any such regulations, the rule is that the old corporation owns all the public property within her new limits, and is responsible for all debts contracted by her before the act of separation was passed. Old debts she must pay, without any claim for contribution; and the new subdivision has no claim to any portion of the public property except what falls within her boundaries, and to all that the old corporation has no claim. *North Hemstead v. Hemstead,* 2 Wend. 134; Dil. on Mun. Corp. sect. 128; *Wade v. Richmond,* 18 Gratt. 583; *Higginbotham v. Com.,* 25 id. 633."

The special act of 1909, creating Grant county, being a complete act in itself of a later date than the sections of Rem. & Bal. Code upon which the appellant relies, is the act under which Grant county was organized and the one to which we must look for the rule to be adopted in the matter of an adjustment of its property, and financial and business relations with the old county of Douglas. As the act creating Grant county has provided a particular basis or rule for an apportionment of existing indebtedness, but has made no provision for an apportionment of existing property, we are constrained to hold that the settlement which the auditors assumed to make is void and cannot be sustained.

The judgment is affirmed.

PARKER, FULLERTON, CHADWICK, and GOSE, JJ., concur.