[No. 50883-1-I. Division One. December 30, 2002.]

THOM SATTERLEE, ET AL., *Appellants*, v. SNOHOMISH COUNTY, ET AL., *Respondents*.

*Michael T. Schein* (of *Reed, Longyear, Malnati & Ahrens*), for appellants.

*James H. Krider, Prosecuting Attorney*, and *Gordon W. Sively, Deputy*, and *Christine O. Gregoire, Attorney General*, and *Jeffrey T. Even, Assistant*, for respondents.

SCHINDLER, J. — This is an appeal of the summary judgment dismissal of a lawsuit to compel the State and Snohomish County to recognize Freedom County. The Washington Supreme Court in *Cedar County Committee v. Munro*[1] held that the creation of a county is a matter within the discretion of the legislature and not something the legislature is under a mandatory duty to do upon presentation of petitions of the requisite number of voters of the proposed new county. Accordingly, based on this binding precedent, we affirm the trial court's summary judgment dismissal of this action because creation of a county is a discretionary act on the part of the legislature, and the appellants are not entitled to an order compelling the legislature to do so.

## FACTS

In July 2001, the appellants, Thom Satterlee, David Peter Guadalupe, and Donna Poeschel, individually and in their capacities as "Interim Commissioners of Freedom County," filed a complaint for declaratory judgment and

---

[1] 134 Wn.2d 377, 950 P.2d 446 (1998).

damages in Skagit County Superior Court against Snohomish County and the State. The complaint alleged that in April 1995, over 12,000 Snohomish County residents signed petitions for the creation of Freedom County, located in an area currently within the boundaries of Snohomish County. The appellants argued that the new county came into existence when the petitions were delivered to the secretary of state on April 23, 1995. Neither the State nor Snohomish County has formally recognized or created Freedom County. The complaint sought damages and the issuance of "mandatory writs" compelling the State and the county to recognize Freedom County and to assist and participate in the transfer of authority, property, and other functions of government from Snohomish County to Freedom County.

A few years earlier, Satterlee and Guadalupe filed a nearly identical complaint in Snohomish County Superior Court seeking creation and recognition of Freedom County. The plaintiff in that lawsuit was Freedom County, by and through its commissioners, Satterlee and Guadalupe. The trial court found that because the legislature had not established Freedom County, it did not exist as a legal entity and it could not properly pursue the action. Accordingly, the court dismissed that lawsuit. This court affirmed the dismissal, holding that Freedom County is not a lawfully established county of the State.[2]

In the present case, both sides filed motions for summary judgment. The trial court granted summary judgment in favor of the State and Snohomish County and dismissed the appellants' action with prejudice. The court found: "Freedom County does not exist as a lawful political subdivision of the state of Washington and . . . neither the state of Washington nor Snohomish County is required to create or recognize the creation of such a county."[3]

---

[2] *Freedom County ex rel. Guadalupe v. Snohomish County*, 95 Wn. App. 839, 977 P.2d 612 (1999), *review denied*, 139 Wn.2d 1022 (2000).

[3] Clerk's Papers (CP) at 180. The court denied the respondents' motions for sanctions under CR 11 and RCW 4.84.185.

The appellants sought direct review in the Supreme Court. They asked the court to reconsider its decision in *Cedar County* based on the argument that the constitutional authority to create a county is concurrent with the legislature and the people of the state of Washington, not exclusive with the legislature. The Supreme Court denied direct review and transferred the case to this court.

## DISCUSSION

■ When reviewing an order of summary judgment brought under CR 56, we engage in the same inquiry as the trial court and consider the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party.[4] Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[5]

■ The appellants argue that the legislature has a duty under article XI, section 3 of the Washington Constitution to officially create and recognize a new county upon submission to the State of petitions signed by the requisite number of voters. Two cases—*Freedom County v. Snohomish County*[6] and the case upon which that decision was based, *Cedar County*[7]—hold to the contrary. *Cedar County* is an opinion of our Supreme Court and is therefore binding precedent on this court. Based on this precedent, we must likewise reject the appellants' argument and hold that the appellants are not entitled to an order compelling the State and the county to create and recognize Freedom County.

[4] *Right-Price Recreation, L.L.C. v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 381, 46 P.3d 789 (2002).

[5] CR 56(c).

[6] *Freedom County ex rel. Guadalupe v. Snohomish County*, 95 Wn. App. 839, 977 P.2d 612 (1999), *review denied*, 139 Wn.2d 1022 (2000).

[7] 134 Wn.2d 377.

The constitutional provision governing new counties provides in part:

> No new counties shall be established which shall reduce any county to a population less than four thousand (4,000), nor shall a new county be formed containing a less population than two thousand (2,000). There shall be no territory stricken from any county unless a majority of the voters living in such territory shall petition therefor and then only under such other conditions as may be prescribed by a general law applicable to the whole state.[8]

In *Cedar County*, the Cedar County Committee submitted petitions to the legislature to create a new county in existing King County. They sought a writ of mandamus to compel the secretary of state to certify the petitions as an election. The Supreme Court held that the secretary of state did not have a duty to perform any function with respect to the formation of a new county. After reaching this decision, the court stated that, while it was not compelled to do so, it took the opportunity "to affirm the continuing vitality of this court's early holdings regarding the Legislature's discretion in the context of county formation."[9] In *Farquharson v. Yeargin,* one of the early cases the court in *Cedar County* referenced, the court held that article XI, section 3 of the constitution prohibits the legislature from exercising its discretion to create a new county unless specified requirements are met, but it does not impose a ministerial duty on the legislature to create a county or provide citizens the right to form a county. Rather, "The creation of a new county is an exercise of legislative power."[10] In *State ex rel. Chehalis County v. Superior Court,* another case the court in *Cedar County* referenced, the court held that article XI, section 3 is "a limitation upon the

---

[8] WASH. CONST., art. XI, § 3.

[9] *Cedar County*, 134 Wn.2d at 382.

[10] *Farquharson v. Yeargin,* 24 Wash. 549, 553, 64 P. 717 (1901) (*quoted in Cedar County*, 134 Wn.2d at 386).

power of the legislature to create a county."[11] In the third case referenced, *Douglas County v. Grant County*, the court held that "the division of counties . . . is solely a legislative function . . . ."[12] Based on these early cases, the court in *Cedar County* concluded:

> The decisions of this court reflect an implicit understanding that the state constitution provides the Legislature with a framework rather than a mandate for county creation. Subject to the limitations of article XI, section 3, the discretion and power to create—or decline to create—a new county resides in the Legislature alone.[13]

In *Freedom County*, this court, citing *Cedar County*, stated that article XI, section 3 does not impose a ministerial duty on the legislature to enact legislation creating a new county even if the legislature is presented with petitions containing a sufficient number of signatures. Because the legislature did not have a duty to create Freedom County upon presentation of the petitions, and because it did not create the county, the court held that Freedom County is not a lawfully established county and was therefore unable to maintain the lawsuit.

*Farquharson, Chehalis County, Douglas County, Cedar County* and *Freedom County* hold that the creation of a county is a matter within the legislature's discretion, subject to constitutional limitations. The first four of these cases are opinions of the Supreme Court, which we are bound to follow. The appellants argue, however, that we are not bound by *Cedar County* because the court's statements regarding the legislature's discretion and power to create, or to decline to create, a new county are mere dicta. While it is true that the court in *Cedar County* decided the case on the ground that the secretary of state had no duty to certify Cedar County's petition as an election and that the court's

---

[11] *State ex rel. Chehalis County v. Superior Court*, 47 Wash. 453, 462, 92 P. 345 (1907) (*quoted in Cedar County*, 134 Wn.2d at 386).

[12] *Douglas County v. Grant County*, 72 Wash. 324, 332, 130 P. 366 (1913) (*quoted in Cedar County*, 134 Wn.2d at 386).

[13] *Cedar County*, 134 Wn.2d at 387.

discussion about the legislature's discretion is technically dicta, the court's discussion was not a new pronouncement of the law. Rather, the court in *Cedar County* clearly stated that it was reaffirming the "continuing vitality" of earlier cases holding that the creation of new counties is a matter within the legislature's discretion.[14] Even if the discussion in *Cedar County* is dicta, it is not dicta in the earlier cases discussed in *Cedar County*. Under these cases, the summary judgment dismissal of the appellants' action was appropriate.

The appellants also argue that we should disregard the holdings of *Farquharson, Chehalis County, Douglas County,* and *Cedar County* because of additional contemporaneous history, namely, a newspaper editorial appearing in the supplement to the reprinted journal of the Constitutional Convention of 1889. This supplement was released just after the Supreme Court issued its opinion in *Cedar County*. It contains articles from various newspapers referenced in the journal's analytical index. For example, the appellants cite the July 26, 1889, editorial appearing in *The Seattle Times* that criticizes article XI, section 3, characterizing it as allowing secession.[15] Even if, however, as the appellants argue, the newspaper articles show that the intent of the framers was contrary to the holdings of the *Farquharson–Cedar County* line of cases, we nevertheless remain bound by these cases.

 In reply to the State's and the county's argument that the petitions for the formation of Freedom County did not contain the requisite number of signatures, the appellants contend that the term "majority of the voters," as used in the second sentence of article XI, section 3, means a majority of the voters who voted in the preceding general

---

[14] *Id.* at 382.

[15] The editorial points to a recent border dispute between King and Pierce Counties as the likely motivation behind the provision. It also suggests that the provision may be linked to a plan by the Northern Pacific Railroad to lessen taxes on its operation in that area, given its greater influence over Pierce County politics.

election, not a majority of the voters living in the territory of the proposed county.

The court in *Cedar County* rejected this identical argument, stating:

> [T]he plain language of the constitution specifies that the petition must bear the signatures of a majority of the voters living in the territory, rather than merely a majority of the number who exercised their franchise at the most recent opportunity.
>
> . . . .
>
> It would be absurd in these days of statewide voter registration to bind the question of county formation to the votes cast for or against a candidate or issue on the ballot in a previous, unrelated election.[16]

Based on *Cedar County*, we reject the appellants' argument.

We affirm the summary judgment entered in favor of the State and the county.[17]

■■ The county seeks an award of attorney fees under RAP 18.9. The county argues that because there is established case law, including a case involving virtually the same parties, the appellants' appeal is frivolous.

An appeal is frivolous " 'if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there [is] no reasonable possibility of reversal.' "[18] In determining whether an appeal is frivolous, the court considers, in addition to the foregoing definition of "frivolous appeal," the following principles: RAP 2.2 gives a civil appellant the right to appeal, all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant, the record should be

---

[16] *Cedar County*, 134 Wn.2d at 383, 385.

[17] Because we affirm the summary judgment on the basis of binding Supreme Court precedent, we need not and do not address the State's and the county's argument that the appellants are collaterally estopped from raising the issue presented in this appeal.

[18] *State v. Chapman*, 140 Wn.2d 436, 454, 998 P.2d 282 (quoting *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 905, 969 P.2d 64 (1998)), *cert. denied*, 531 U.S. 984 (2000).

considered as a whole, and an appeal that is affirmed simply because the court rejects the arguments is not frivolous.[19]

We deny the county's request for an award of attorney fees under RAP 18.9. The appellants sought review by the Supreme Court based on arguments and information not raised or considered before. The appeal is not frivolous.

We affirm the summary judgment entered in favor of the State and the county and deny the county's request for an award of attorney fees pursuant to RAP 18.9.

ELLINGTON and APPELWICK, JJ., concur.

Reconsideration denied January 27, 2003.

Review denied at 150 Wn.2d 1008 (2003).

---

[19] *In re Marriage of Wagner*, 111 Wn. App. 9, 18, 44 P.3d 860 (2002).